**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
148 West 24th Street, 8th Floor
New York, NY 10011
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiffs,*
*FLSA Collective Plaintiffs,*
*and the Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

AUBER BALTAZAR FLORES, *on behalf of himself,*
*FLSA Collective Plaintiffs, and the Class,*

Plaintiff,

v.

3788 FOOD CORP.,
1384 MEAT & FOOD CORP.,
312 FOOD CORP.,
3560 FOOD & MEAT CORP.,
1850 FOOD CORP.,
2750 FOOD CORP.,
MELROSE GROCERY AND FOOD CORP.,
1274 MEAT MARKET & GROCERY CORP.,
and JOSE GRULLON,

Defendants.

---

Case No:

**CLASS AND COLLECTIVE ACTION COMPLAINT**

Plaintiff AUBER BALTAZAR FLORES ("Plaintiff"), on behalf of himself and others similarly situated, by and through their undersigned attorneys, hereby file this Class and Collective Action Complaint against Defendants, 3788 FOOD CORP. d/b/a EXTRA JUMBO BY ASSOCIATED, 1384 MEAT & FOOD CORP. d/b/a EXTRA JUMBO MARKET PLACE, 312 FOOD CORP. d/b/a EXTRA JUMBO MARKET PLACE, 3560 FOOD & MEAT CORP.

d/b/a EXTRA JUMBO BY ANTILLANA, 1850 FOOD CORP. d/b/a ANTILLNA SUPERFOOD MARKETPLACE, 2750 FOOD CORP. d/b/a ANTILLNA SUPERFOOD MARKETPLACE, MELROSE GROCERY AND FOOD CORP. d/b/a ANTILLNA SUPERFOOD MARKETPLACE, 1274 MEAT MARKET & GROCERY CORP. d/b/a ANTILLNA SUPERFOOD MARKETPLACE (the "Corporate Defendants"), and JOSE GRULLON (the "Individual Defendant" and collectively with the Corporate Defendants, the "Defendants") and state as follows:

**INTRODUCTION**

1. Plaintiff alleges, pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. §§ 201 *et. seq.* ("FLSA"), that he and similarly situated individuals are entitled to recover from Defendants: (1) unpaid wages, including overtime, due to time shaving; (2) liquidated damages, and (3) attorneys' fees and costs.

2. Plaintiff alleges that, pursuant to the New York Labor Law ("NYLL"), he and similarly situated individuals are entitled to recover from Defendants: (1) unpaid wages, including overtime, due to time shaving; (2) liquidated damages, (3) statutory penalties due to WTPA violations; and (4) attorneys' fees and costs.

3. Plaintiff further alleges that Defendants breached their contract with Plaintiff and Class Members by failing to pay employer payroll taxes for Plaintiff and Class Members, as required by the Federal Insurance Contribution Act ("FICA"). Plaintiff also alleges that, in retaining those sums for themselves, Defendants unjustly enriched themselves at the expense of Plaintiff and Class Members.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over this controversy pursuant to 29 U.S.C. §216(b), 28 U.S.C. §§1331, 1337 and 1343, and has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367.

5. Venue is proper in the Southern District pursuant to 28 U.S.C. §1391.

## PARTIES

6. Plaintiff FLORES, for all relevant time periods, was a resident of New York County, New York.

7. Individual Defendant owns and operates a multi-location chain of commercial supermarkets, grocery stores, and retail food enterprises across the State of New York, comprised of at least eight (8) different locations in New York that have been under the following trade names:

(a) "Extra Jumbo by Associated" – 3788 Broadway, New York, NY 10032;

(b) "Extra Jumbo Market Place" – 1384 Nelson Ave, Bronx, NY 10452;

(c) "Extra Jumbo Market Place" – 312 Audubon Ave, New York, NY 10033;

(d) "Extra Jumbo by Antillana" – 3560 Jerome Ave, Bronx, New York 10467;

(e) "Antillana Superfood Marketplace" – 1850 Jerome Ave, Bronx, NY 10453;

(f) "Antillana Superfood Marketplace" – 2750 E Tremont Ave, Bronx, NY 10461;

(g) "Antillana Superfood Marketplace" – 616 Melrose Ave, Bronx, NY 10455;

(h) "Antillana Marketplace" – 1274 Saint Nicholas Ave Stores 1,2,3 New York, NY 10033.

8. Defendants own and operate the chain of supermarkets as a single integrated enterprise. Specifically, the supermarkets are engaged in related activities, share common ownership, and have a common business purpose.

(a) Upon information and belief, the supermarkets share common ownership through Individual Defendant, JOSE GRULLON. Specifically, New York Department of State and New York State Liquor Authority public records identify Jose Grullon as the Chief Executive Officer, principal, or agent for service of process for all the Corporate Defendants identified herein. *See* **Exhibit A**. This common ownership and control is corroborated by The Market Report, an independent trade publication covering the retail grocery industry, which identifies JOSE GRULLON as the owner of Extra Jumbo and Antillana Superfood locations throughout Manhattan and the Bronx. *See* **Exhibit B**.

(b) The supermarkets all cater Caribbean and Hispanic food, sell similar goods and have the same suppliers.

(c) The supermarkets all have the same vendors, including payroll providers, produce suppliers, and website developers.

(d) The supermarkets share a common layout, décor, signage, and ambience, reflecting centralized design and operational decision-making across locations.

9. Corporate Defendant 3788 FOOD CORP is a domestic business corporation organized under the laws of the State of New York, with a principal place of business located at 3788 Broadway, New York, NY 10032.

10. Corporate Defendant 1384 MEAT & FOOD, CORP is a domestic business corporation organized under the laws of the State of New York, with a principal place of business located at 1384 Nelson Ave, Bronx, NY 10452.

11. Corporate Defendant 312 FOOD CORP is a domestic business corporation organized under the laws of the State of New York, with a principal place of business located at 312 Audubon Ave, New York, NY 10033.

12. Corporate Defendant 3560 FOOD & MEAT CORP is a domestic business corporation organized under the laws of the State of New York, with a principal place of business located at 3560 Jerome Avenue, Bronx, NY 10467.

13. Corporate Defendant 1850 FOOD CORP is a domestic business corporation organized under the laws of the State of New York, with a principal place of business located at 1850 Jerome Ave, Bronx, NY 10453.

14. Corporate Defendant 2750 FOOD CORP is a domestic business corporation organized under the laws of the State of New York, with a principal place of business located at 2750 E Tremont Ave, Bronx, NY 10461.

15. Corporate Defendant MELROSE GROCERY AND FOOD CORP is a domestic business corporation organized under the laws of the State of New York, with a principal place of business located at 616 Melrose Ave, Bronx, New York 10455.

16. Corporate Defendant 1274 MEAT MARKET & GROCERY CORP is a domestic business corporation organized under the laws of the State of New York, with a principal place of business located at 1272 1278 Saint Nicholas Ave Stores 1,2,3 New York, NY 10033.

17. Individual Defendant JOSE GRULLON is the owner and founder of Corporate Defendants. Individual Defendant exercised operational control as it relates to all employees including Plaintiff, FLSA Collective Plaintiffs, and the Class. At all relevant times, Individual Defendant exercised the power to fire and hire employees, supervise and control employee work schedules and conditions of employment, and determine the rate and method of compensation of

employees including those of Plaintiff, FLSA Collective Plaintiffs, and Class Members at each of the restaurant locations. At all relevant times, employees of Defendants' business could complain to Individual Defendant directly or through management regarding any of the terms of their employments, and Individual Defendant would have the authority to effect any changes to the quality and terms of employees' employments, including changing their schedules, compensation, or terminating or hiring such employees. At all relevant times, Individual Defendant exercised functional control over Defendants' business and its financial operations.

18. At all relevant times, each of the Corporate Defendants was and continues to be an "enterprise engaged in commerce" within the meaning of the FLSA and the NYLL.

19. At all relevant times, the work performed by Plaintiff and Class Members was directly essential to the business operated by Defendants.

**FLSA COLLECTIVE ACTION ALLEGATIONS**

20. Plaintiff brings claims for relief as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all non-exempt employees, including cashiers, grocery clerk, produce clerk, stocker, bagger, among others, employed by Defendants on or after the date that is six years before the filing of the Complaint in this case as defined herein (herein, "FLSA Collective Plaintiffs").

21. At all relevant times, Plaintiff and the other FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subjected to Defendants' decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules, all culminating in a willful failure and refusal to pay Plaintiff and FLSA Collective Plaintiffs their proper wages, including their overtime premiums

at one and a half times their regular rates for all hours worked over forty (40) in a workweek, due to Defendants' time shaving policy.

22. The claims for relief are properly brought under and maintained as an opt-in collective action pursuant to § 16(b) of the FLSA, 29 U.S.C. 216(b). The FLSA Collective Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided to FLSA Collective Plaintiffs via first class mail to the last address known to Defendants.

**RULE 23 CLASS ALLEGATIONS**

23. Plaintiff brings claims for relief pursuant to the Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23, on behalf of all non-exempt employees, including cashiers, grocery clerk, produce clerk, stocker, bagger, among others, employed by Defendants on or after the date that is six years before the filing of the Complaint in this case as defined herein (the "Class" or "Class Members").

24. The Class Members are readily ascertainable. The number and identity of the Class Members are determinable from the records of Defendants. The hours assigned and worked, the position held, and rates of pay for each Class member may also be determinable from Defendants' records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under F.R.C.P. 23.

25. The proposed Class is so numerous such that a joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown because the facts on which the

calculation of that number rests presently within the sole control of Defendants, there is no doubt that there are more than forty (40) members of the Class.

26. Plaintiff's claims are typical of those claims that could be alleged by any member of the Class, and the relief sought is typical of the relief, that would be sought by each member of the Class in separate actions. All the Class members were subjected to the same corporate practices by Defendants, as alleged herein, of Defendants' (1) failure to pay proper wages, including overtime, due to time shaving, (2) failure to provide accurate IRS Forms W-2, and to remit the employer's share of FICA taxes on their behalf, by paying Plaintiff and Class Members entirely in cash, (3) failure to provide proper wage and hour notices, at dates of hiring and annually thereafter, per requirements of the New York Labor Law, and (4) failure to provide proper wage and hour statements, per requirements of the New York Labor Law.

27. Defendants' corporate-wide policies and practices affected all Class members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class member. Plaintiff and other Class members sustained similar losses, injuries, and damages arising from the same unlawful policies, practices and procedures of Defendants.

28. Plaintiff is both able to fairly and adequately protect the interests of the Class and have no interests antagonistic to the Class. Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented plaintiffs in wage and hour cases.

29. A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of the wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly

situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because losses, injuries and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

30. Defendants and other employers throughout the state violate the New York Labor Law. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

31. There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

a) Whether Defendants employed Plaintiff and the Class within the meaning of the New York Labor Law;

b) What are and were the policies, practices, programs, procedures, protocols and plans of Defendants regarding the types of work and labor for which Defendants did not pay Plaintiff and Class Members properly;

c) At what common rate, or rates subject to common methods of calculation, was and are Defendants required to pay Plaintiff and Class Members for their work;

d) Whether Defendants properly notified Plaintiff and the Class Members of their hourly rates and overtime rates;

e) Whether Defendants operated their business with a policy of failing to pay Plaintiff and Class Members for all hours worked due to time shaving;

f) Whether Defendants properly compensated overtime premiums to Plaintiffs and Class Members for their overtime hours worked under New York State law;

g) Whether Defendants breached the covenant of good faith and fair dealing by failing to remit payroll taxes on behalf of Plaintiff and Class Members;

h) Whether Defendants were unjustly enriched by retaining monies that should have been paid to the IRS on behalf of Plaintiff and Class Members;

i) Whether Defendants provided Plaintiff and Class Members with proper wage and hour notices, at their dates of hiring and annually, per requirements of the New York Labor Law; and

j) Whether Defendants provided Plaintiff and Class Members with proper wage statements with each payment of wages, as required by New York Labor Law.

## STATEMENT OF FACTS

### i. Plaintiff's Employment Backgrounds

32. In or around February 2024, Plaintiff was hired by Defendants to work as a produce department stocker, located at 3788 Broadway, New York, NY 10032. Plaintiff was employed by Defendants until in or around November 2025, when Plaintiff was terminated for no reason.

33. Throughout his employment, Plaintiff was scheduled by Defendants to work six (6) days per week. Plaintiff was scheduled by Defendants to work shifts from 4:00 p.m. to 11:00 p.m., Monday to Friday, for a total of seven (7) hours a day, and for 3:00 p.m. to 10:00 p.m. on Sunday, for a total of seven (7) hours a day, totaling forty-two (42) hours per week. At all relevant times, Defendants scheduled FLSA Collective Plaintiffs and Class Members to work similar amounts of hours per week.

34. Throughout his employment, Plaintiff was paid by Defendants at the applicable minimum wage rate for all hours worked. At all relevant times, Defendants paid FLSA Collective Plaintiffs and Class Members at similar rates.

**ii. Plaintiff's Time Shaving Claim**

35. At all relevant times, Defendants failed to compensate Plaintiff, FLSA Collective Plaintiffs, and Class Members their proper wages for all hours they worked, due to Defendants' policy of time shaving, in violation of the FLSA and the NYLL.

36. At all relevant times, Plaintiff, FLSA Collective Plaintiffs, and Class Members were frequently interrupted during their purported meal breaks and required to resume working before the end of the thirty (30)-minute break. Specifically, management repeatedly directed Plaintiff to refill the produce department and perform other work. As a result, Plaintiff was unable to take a bona fide thirty (30)-minute meal break. Defendants nevertheless automatically deducted thirty (30) minutes from Plaintiff's time each day regardless of whether Plaintiff took the meal break. Thus, Defendants maintained a sham meal-break policy under which Plaintiff was deducted for a thirty (30)-minute meal break despite being required to continue working during that time. At all relevant times, FLSA Collective Plaintiffs and Class Members were similarly interrupted and required to work through their meal breaks.

37. At all relevant times, Plaintiff clocked in at the beginning and end of their shift. However, Defendants time shaved Plaintiff's actual clock-in and clock-out times, inaccurately recording Plaintiff's start and end times to reflect significantly less time worked than Plaintiff actually worked. Plaintiff was always paid based on Defendants' inaccurate, time-shaved records instead of their actual hours worked. As a result, Defendants underpaid Plaintiff for all hours worked, including overtime hours, by instituting and maintaining an inaccurate clocking system.

38. At all relevant times, Plaintiff was subjected to Defendants' policy of post-shift time shaving. Defendants maintained a policy of having every employee leave the store at the same time, which resulted in Plaintiff staying up to forty-five (45) minutes past his scheduled

shift. However, Defendants required Plaintiff to clock out according to his scheduled shift, not when his actual workday ended, which resulted in unpaid wages, including overtime, for all hours worked. FLSA Collective Plaintiffs and Class Members suffered similarly from Defendants' policy of post-shift time shaving policy.

39. At all relevant times, FLSA Collective Plaintiffs and Class Members were similarly subjected to the same time shaving policies and required by Defendants to engage in unpaid labor on a daily basis without any compensation.

40. At all relevant times, Defendants knowingly and willfully operated their business with a policy of failing to pay wages to Plaintiff, FLSA Collective Plaintiffs, and Class Members for all hours they worked, due to Defendants' policy of time shaving, in violation of the FLSA and the NYLL.

**iii. <u>Plaintiff's Breach of Contract and Unjust Enrichment Claims</u>**

41. At all relevant times, Defendants paid Plaintiff entirely in cash on a weekly basis. Similarly, Class members were paid in cash on a weekly basis.

42. As a result, Defendants failed to provide Plaintiff and Class Members with accurate IRS Forms W-2 for all the tax years of their employment and failed to properly record, account for, and report to the IRS all monies paid to Plaintiff and Class Members.

43. When Defendants hired Plaintiff and Class Members, the parties entered into a contract. The covenant of good faith and fair dealing is implicit in every contract under New York law.

44. In violating the Internal Revenue Code by failing to provide proper W-2 forms, Defendants also breached the covenant of good faith by denying Plaintiff and Class Members the

contract's expected value—specifically, the employer's share of Social Security and Medicare taxes for each employee.

45. Defendants also unjustly enriched themselves at the expense of Plaintiff and Class Members by retaining monies that should have been remitted to the IRS on behalf of Plaintiff and Class Members.

46. As a result, Plaintiff and Class Members will either (1) be liable to the IRS for the employer's share of FICA taxes or (2) upon retirement, suffer from diminished Social Security and Medicare benefits because they did not pay enough into the system.

47. The employer's share of Social Security taxes is 6.2%. The employer's share of Medicare taxes is 1.45%. Accordingly, Defendants must compensate Plaintiff and Class Members 7.65% of all their earnings from Defendants beginning six years prior to the filing of this Complaint.

48. Defendants are liable to Plaintiff and Class Members for failing to pay FICA taxes for the wages earned by Plaintiff and Class Members.

**iv. Plaintiff's WTPA Violation Claims**

49. At all relevant times, Defendants failed to provide proper wage notices and accurate wage statements to Plaintiff and Class Members, in violation of the Wage Theft Protection Act ("WTPA")—incorporated into the NYLL.

50. In failing to provide proper wage statements and notices, Defendants have failed to comply with the law in a manner that entails a concrete harm to an interest identified by the New York State legislature. Following the decision in *Guthrie v. Rainbow Fencing Inc.*, 113 F.4th 300, 303 (2d Cir. 2024), courts have generally held that there is no categorical bar on Article III standing for WTPA claims. Instead, the Second Circuit found that "[t]he lack of such

notices and statements might impair 'an employee's ability to seek relief for violations they may not have information about'" to an extent sufficient to support standing.

51. New York courts continue to find sufficient standing to support standing to support these claims. One such court stated the following at Summary Judgment:

> "Here, the Court determines that Plaintiffs have adequately alleged and established actual and concrete downstream harm as a result of Defendants' failure to provide the required wage and hour notices and wage statements. Plaintiffs have shown that "Defendants' violations impaired their ability to seek relief due to a lack of information." More than that, Plaintiffs have proved, and the Court agrees, that Defendants' failure to maintain proper wage statements because of their automatic meal-break deduction and eight-hour rounding led Plaintiffs to lose wages. These are exactly the types of harm that the Second Circuit considered to be sufficient to establish standing in *Guthrie*. Therefore, the Court finds for Plaintiffs on this issue."

*Sanchez v. Clipper Realty, Inc.*, 2026 U.S. Dist. LEXIS 36716, at *61 (S.D.N.Y. February 23, 2026) (internal citations omitted).

52. Here, Defendants' conduct has led to exactly the kind of injury contemplated in *Guthrie* and *Sanchez.* By failing to inform Plaintiff and Class Members of the actual hours that they worked by not providing them with wage statements, Defendants were able to hide their wrongdoing, as Plaintiff and Class Members were unaware of the fact that they were being underpaid. Had Defendants provided proper wage statements to Plaintiff and Class Members which accurately listed the total number of hours Plaintiff and Class Members actually worked, as required by law, Defendants would have had to either (a) increase the wages to correspond to the hours actually worked or (b) forthrightly acknowledge, by way of the wage statement, that the employee's wages did *not* correspond to the hours the employee actually worked.

53. By failing to report all of Plaintiff's and Class Members' hours, Defendants were able to reduce the employee earnings that they later reported to the IRS through the employee's W-2 form, as such information is derived from the information on employees' wage statements.

The effect of reporting reduced wages on an employee's W-2 is, in turn, to reduce the amount of social security benefits available to the employee, as an employee's entitlement to benefits reflects how much money he or she is reported as having contributed to the social security system. As a result, Plaintiff and Class Members were irreversibly injured with respect to their Social Security benefits—a fact which Defendants were able to hide from them by failing to provide them with proper wage statements.

54. Furthermore, Defendants failed to provide any wage notices to Plaintiff or Class Members. Once again, had Defendants provided Plaintiff and Class Members with wage notices that communicated the rates that Defendants actually intended to pay them, Plaintiff and Class Members would have been able to contest the unfair pay rates or choose not to take a job with Defendants. Instead, due to Defendants' intentional hiding of that information, Plaintiff and Class Members accepted their employments with Defendants without the knowledge that Defendants did not intend to be bound to their promised pay rates.

55. Defendants knowingly and willfully operated their business with a policy of failing to provide Plaintiff and Class Members with wage notices and accurate wage statements, in violation of the NYLL.

56. Plaintiff retained Lee Litigation Group, PLLC to represent Plaintiff, FLSA Collective Plaintiffs, and Class Members in this litigation, and has agreed to pay the firm a reasonable fee for its services.

**STATEMENT OF CLAIM**

**COUNT I**

**VIOLATION OF THE FAIR LABOR STANDARDS ACT**

57. Plaintiff realleges and incorporates all the above allegations of this Complaint as fully set forth herein.

58. At all relevant times, Defendants were and continue to be employers engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a). Further, Plaintiff and FLSA Collective Plaintiffs are covered individuals within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

59. At all relevant times, Defendants employed Plaintiff and FLSA Collective Plaintiffs within the meaning of the FLSA.

60. At all relevant times, Corporate Defendant had gross annual revenues in excess of $500,000.

61. At all relevant times, Defendants had a policy and practice that failed to pay Plaintiff and FLSA Collective Plaintiffs their proper wages, including overtime, due to time shaving.

62. Records, if any, concerning the number of hours worked by Plaintiff and FLSA Collective Plaintiffs and the actual compensation paid to Plaintiff and FLSA Collective Plaintiffs should be in the possession and custody of the Defendants. Plaintiff intends to obtain these records by appropriate discovery proceedings to be taken promptly in this case and, if necessary, will then seek leave of Court to amend this Complaint to set forth the precise amount due.

63. Defendants knew of and/or showed a willful disregard for the provisions of the FLSA as evidenced by their failure to compensate Plaintiff and FLSA Collective Plaintiffs their

proper wages, including their proper wages and overtime premiums, when Defendants knew or should have known such was due.

64. Defendants failed to properly disclose or apprise Plaintiff and FLSA Collective Plaintiffs of their rights under the FLSA.

65. As a direct and proximate result of Defendants' willful disregard of the FLSA, Plaintiff and FLSA Collective Plaintiffs are entitled to liquidated (i.e., double) damages pursuant to the FLSA.

66. Due to the intentional, willful and unlawful acts of Defendants, Plaintiff suffered damages in an amount not presently ascertainable of unpaid wages, overtime wages and liquidated damages.

67. Plaintiff and FLSA Collective Plaintiffs are entitled to an award of their reasonable attorneys' fees and costs pursuant to 29 U.S.C. §216(b).

**COUNT II**

**VIOLATION OF THE NEW YORK LABOR LAW**

68. Plaintiff realleges and incorporates all the above allegations of this Complaint as fully set forth herein.

69. At all relevant times, Plaintiff and Class Members were employed by the Defendants within the meaning of the New York Labor Law, §§2 and 651.

70. Defendants willfully violated Plaintiff's and Class Members' rights by subjecting them to a policy of time shaving.

71. Defendants failed to properly notify employees of their hourly pay rate and overtime rate, in direct violation of the New York Labor Law.

72. Defendants failed to provide Plaintiff and Class Members with proper wage and hour notices, at their dates of hiring and annually, per requirements of the New York Labor Law.

73. Defendants failed to provide Plaintiff and Class Members with proper wage statements with every payment as required by New York Labor Law § 195(3).

74. Due to the Defendants' New York Labor Law violations, Plaintiff and Class members are entitled to recover from Defendants their unpaid wages, including overtime, due to time shaving, reasonable attorneys' fees, liquidated damages, statutory penalties, and costs and disbursements of this action, pursuant to New York Labor Law.

**COUNT III**

**BREACH OF CONTRACT**

75. Plaintiff realleges and incorporates all the foregoing paragraphs as if fully set forth herein and further alleges as follows.

76. "In New York, all contracts imply a covenant of good faith and fair dealing in the course of performance … This covenant embraces a pledge that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract … [T]he duties of good faith and fair dealing … encompass any promises which a reasonable person in the position of the promisee would be justified in understanding were included [in the contract]." *511 W. 232nd Owners Corp.* v. *Jennifer Realty Co.*, 98 N.Y.2d 144, 153 (2002).

77. Defendants breached this duty, and consequently the parties' contract, when they paid Plaintiff's and Class Members' wages entirely in unreported cash, without withholdings or deductions, and further failed to provide proper W-2 forms. As a result, Plaintiff and Class Members lost part of the benefit of the bargain for which they contracted, including Social

Security and Medicare taxes, suffering a loss in the amount of the FICA taxes that Defendants should have, but did not, pay on their behalf.

**COUNT IV**

**UNJUST ENRICHMENT**

78. Plaintiff realleges and incorporates herein by reference the allegations contained in all preceding paragraphs, and further allege as follows:

79. To state a claim for unjust enrichment, a plaintiff must allege that: "(1) the [defendant] was enriched, (2) at [plaintiff's] expense, and (3) that it is against equity and good conscience to permit the [defendant] to retain what is sought to be recovered." *Georgia Malone & Co., Inc. v Rieder*, 19 N.Y.3d 511, 516 (2012) (internal quotations omitted).

80. Defendants were unjustly enriched when they kept for themselves money that should have been paid to the Internal Revenue Service as Defendants' employer FICA contribution. Such came at the expense of Plaintiff and Class Members because they will either (1) be liable to the IRS for the employer's share or (2) upon retirement suffer from diminished Social Security and Medicare benefits because they did not pay enough into the system.

81. Accordingly, all sums that Defendants should have paid to the IRS should be disgorged from Defendants and transferred to Plaintiff and Class Members.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, on behalf of themselves, FLSA Collective Plaintiffs, and Class Members, respectfully request that this Court grant the following relief:

a. A declaratory judgment that the practices complained of herein are unlawful under the FLSA and the NYLL;

b. An injunction against Defendants and their officers, agents, successors, employees, representatives, and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies, and patterns set forth herein;

c. An award of unpaid wages, including overtime, for all hours worked by Plaintiff, FLSA Collective Plaintiffs and Class Members for which Defendants failed to compensate them, due under the FLSA and the NYLL;

d. Contractual damages for Defendants' failure to keep their promise to abide by the Internal Revenue Code and fund Plaintiff's and Class Members' retirement through FICA contributions;

e. Disgorgement from Defendants of all illegally retained sums that should have gone towards Plaintiff's and Class Members' FICA contributions;

f. An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay wages pursuant to 29 U.S.C. § 216;

g. An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay wages pursuant to the NYLL;

h. An award of statutory penalties to the Class as a result of Defendants' failure to comply with the wage notice and wage statement requirements of NYLL §§ 195(1) and 195(3);

i. An award of pre-judgment and post-judgment interest, costs, and expenses of this action together with reasonable attorneys' and experts' fees;

j. Designation of Plaintiff as Representative of the FLSA Collective Plaintiffs;

k. Designation of this action as a class action pursuant to F.R.C.P. 23;

l. Designation of Plaintiff as Representative of the Class; and

m. Such other and further relief as this Court deems just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all issues so triable as of right by jury.

Dated: September 24, 2026
New York, New York

Respectfully submitted,

**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
148 West 24th Street, 8th Floor
New York, NY 10011
Tel.: 212-465-1188
Fax: 212-465-1181

*Attorneys for Plaintiff,*
*FLSA Collective Plaintiffs,*
*and the Class*

By: /s/ *C.K. Lee* ____________________
C.K. Lee, Esq.